NEIL E. McNEICE and H. MAXINE McNEICE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McNeice v. Commissioner
Docket No. 12453-79
United States Tax Court
T.C. Memo 1981-86; 1981 Tax Ct. Memo LEXIS 655; 41 T.C.M. (CCH) 969; T.C.M. (RIA) 81086; February 25, 1981. *655 H. William Lyle, for the petitioners. David W. Otto, for the respondent. HALL MEMORANDUM OPINION HALL, Judge: Respondent determined a $ 105,423 deficiency in petitioners' 1975 income tax and a $ 42,675 deficiency in petitioners' 1976 income tax. The issue for decision [1] is whether petitioners realized gain upon the gift of stock to an irrevocable trust when the gift was conditioned on the trustee's paying the resulting gift tax liability. This case was submitted fully stipulated. Petitioners, Neil E. and H. Maxine McNeice, husband and wife, resided in Tucson, Arizona when they filed their petition in this case. [2] They filed timely joint federal income tax returns for 1975 and 1976. Petitioners determined their income and expenses for 1975 on the cash receipts and disbursements method of accounting. On or about July 25, 1975, Neil created an irrevocable trust ("Trust H") wherein he named his daughter Chella McNeice as primary beneficiary and The Arizona Bank as trustee. On or about July 25, 1975, Maxine *656 created an irrevocable trust ("Trust W") wherein she named her son Neil Sanford McNeice as primary beneficiary and the First National Bank of Arizona ("First National") as trustee. Petitioners funded their respective trusts with 15,000 shares of Utah International Corporation stock. Each petitioner owned separately the stock transferred into trust. The trusts contained identical provisions except for the differing trustee and beneficiary. Article III of each trust provided that: The Trustee, as Donee, shall pay all Federal Gift Taxes and capital gains taxes which may be incurred by the establishment of this Trust, said sums shall be paid out of the principal of the Trust. The fair market value of the 15,000 shares of Utah International stock on the date of the transfer in trust was $ 1,039,687.50. Each petitioner filed a gift tax return (Form 709) for the quarter ended September 30, 1975, in which they reported their respective stock transfer in trust. [3] Neil reported his gift of stock as follows: 15,000 shares Utah International *657 at 69.3125 to the Arizona Bank, as trustee, Stone & Alameda, Tucson, Arizona, to create an irrevocable trust for benefit of Chella McNeice. Total value of stock
1,039,687.50
Less gift tax paid by donee
209,181.45
Net gift
830,506.05
Maxine reported her gift of stock as follows: 15,000 shares Utah International at 69.3125 to First National Bank of Arizona, as trustee, 150 North Stone, Tucson, Arizona, to create an irrevocable trust for benefit of Neil S. McNeice. Total value of stock
1,039,687.50
Less gift tax paid by donee
208,996.47
Net Gift
830,691.03
Each petitioner included the above net gifts in computing their taxable gifts. For purposes of this case the parties agree that the federal gift tax liability arising from the July 25, 1975, transfers into trust was at least $ 208,996.47 with respect to Maxine's transfer and $ 209,181.45 with respect to Neil's transfer. On November 17, 1975, First National borrowed $ 208,996.47 to pay the federal gift taxes reported on the September 30, 1975, gift tax return filed by Maxine. The assets of Trust W were used as collateral for the loan. The bank paid the gift taxes in 1975. On February 9, 1976, First *658 National sold 4,000 shares of Utah International stock for a net price of $ 210,105.44 and paid off the loan. On November 10, 1975, The Arizona Bank borrowed $ 205,500 to pay the federal gift taxes reported on the September 30, 1975 gift tax return filed by Neil. The assets of Trust H were used as collateral for the loan. The bank paid the gift taxes in 1975. On or before February 12, 1976, the Arizona Bank sold 6,000 shares of Utah International stock and a portion of the sale proceeds were used to pay off the loan. Petitioners each had a zero basis in the Utah International stock they transferred into trust. On July 25, 1975, each petitioner had held their respective Utah International stock for longer than six months. The Utah International stock transferred into the respective trusts was not encumbered or used as collateral for any loans at the time of transfer. The transfers in trust did not render either petitioner insolvent. Petitioners intended the establishment and funding of the two trusts to be part of their estate plan by which certain ownership interests in the Utah International Corporation would be transferred to their children. In his statutory notice, *659 respondent determined that the gift taxes paid by the trustees represented long-term capital gains to petitioners. Inasmuch as the facts and legal questions presented here are indistinguishable from those of , on appeal (6th Cir., May 5, 1978), and , on appeal (9th Cir., April 9, 1980), we hold that petitioners did not realize income as a result of their gifts of stock conditioned upon the trustees' payment of the resulting federal gift taxes. [4]
*660 Decision will be entered for the petitioners.
Footnotes
1. By stipulation petitioners withdrew their request for legal fees.↩
2. Petitioner H. Maxine McNeice occasionally uses the name Helen M. McNeice.↩
3. The quarterly returns filed by each petitioner also reported other gifts in addition to the stock transfers referred to in this opinion.↩
4. For the first time on brief petitioners request this Court to award punitive damages against respondent for continuing to litigate this case is light of the judicial precedents against respondent's position. Our jurisdiction is limited and does not include the awarding of punitive damages. Cf. , affd. (taxpayer denied costs). Furthermore, this Court will generally not consider issues raised for the first time on brief. See .↩